47 CCPA
**Application of William SILBERSTEIN and Samuel L. Apter.**

**Patent Appeal No. 6575.**

United States Court of Customs and Patent Appeals.

July 6, 1960.

John P. Chandler, New York City, for appellants.

Clarence W. Moore, Washington, D. C. (S. Wm. Cochran, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals which affirmed the examiner's rejection of claims 18, 19, 21, the only claims remaining in appellants' application serial No. 315,912 filed October 21, 1952, and entitled "Hermetically Sealed Lead-Through Terminal."

The invention relates to an hermetically sealed lead-through terminal or insulated electrical connector which passes through an opening in housings for electrical apparatus, especially those which must be maintained free from moisture. The elected species, to which the claims on appeal are drawn, is described as comprising an insulating bushing having an end-to-end bore, placed in an opening in the housing, which may be of sheet metal. The bushing material may be synthetic rubber but is preferably tetrafluoroethylene, commercially known by the

[1] United States Senior Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge *O'CON-* *NELL,* pursuant to provisions of Section 294(d), Title 28 U.S.C.

trade name "Teflon." "Teflon" is particularly desirable because under certain circumstances it will not permanently set and therefore, if deformed, continuously exerts pressure against any member resisting return to the original shape. Into the bore of the insulator bushing is forced a rod-like conductor having a small annular flange, one face of which is conical, the other face being perpendicular to the rod axis to form what the application calls "an annular knife edge" between the annular surfaces of the flange. Also, the conductor has a diameter slightly larger than that of the bushing bore, so that when inserted it forms an airtight, moisture-proof seal. The opening in the housing wall has an inwardly extending flange which is crimped into the insulating bushing, sealing the bushing in the opening and embedding the annular flange of the conductor more firmly into the bushing.

The claims are article claims drawn to the completed combination assembled in a wall opening. Claim 19 is representative and reads:

"The combination with a panel for an electrical apparatus having an opening therein, of an insulator formed of resilient, deformable plastic material and having a through bore, and a conductor pin extending through the bore, the pin being provided with an annular flange which is embedded within the plastic insulator, the diameter of the insulator being greater than the diameter of the opening and being constricted by the edges of the opening to form a tight seal between the insulator and the edge of the opening."

Claim 18 recites "an opening" in the deformable plastic material and "a conductor pin positioned within" the opening. In this respect it is broader than claim 19, in that it does not require the conductor to pass completely through the insulator, appellants' brief stating that it is therefore readable on a stand-off insulator. Claim 21 is substantially the same as claim 18 except that it is specific to an insulator formed of tetrafluoroethylene.

The references relied on are:

Johnston 2,433,911 January 6, 1948; Wilkoff 2,449,356 September 14, 1948; Blackband (British) 641,917 August 23, 1950.

Johnston discloses a sealed, lead-through terminal for electrical housings. A sleeve or bushing of resilient, compressible, insulating material is forced into a tapered metal eyelet of slightly smaller diameter than the resilient sleeve, part of the sleeve protruding at either end of the eyelet. Natural and synthetic rubber are mentioned as being particularly advantageous materials for the insulator. The insulating sleeve has a through bore into which a conductor rod of larger diameter than the bore is forced, putting the resilient, insulating sleeve in compression. The eyelet is then inserted into an opening in the housing and soldered in place forming a tight seal.

The British patent likewise discloses an insulating lead-through for electrical housings. The housing wall has an opening into which is inserted an insulating sleeve of approximately the same outside diameter as the wall opening. The bore of the insulating sleeve is "just greater than half the diameter" of a rod-like conductor which is forced through the bore, expanding the sleeve where confined by the wall and causing the sleeve to bulge out at each end. The sleeve is made of polytetrafluoroethylene and "by virtue of the property of the material of tending to return to its original shape and size, * * *, a pressure tight seal is also formed between the bush and the rod."

Wilkoff discloses shielded spark plug leads which have an insulating tubing forced over a metal terminal of the lead. The drawing clearly shows that the terminals are provided with "knife edge," annular, flanges which are embedded in the insulating tubing, apparently to aid in retaining and securing the terminals within the tubing. The specification merely says that the terminals are "externally knurled, ribbed or roughened."

Compressed air is used to expand the tube which is then placed over the terminal and when the air is released the tubing shrinks tightly over the terminal, embedding the flanges in the wall of the tubing bore.

The board affirmed the examiner's rejection of the claims as being unpatentable over Johnston in view of Wilkoff, the British patent being relied on as teaching the use of tetrafluoroethylene as the insulator material. Appellants contended there, as they do here, that with their device the conductor pin may be placed within the insulator either before or after the insulator is placed within the wall opening, while the prior art teachings require the conductor to be inserted after the insulator is placed within the wall opening. Their other contentions are that Johnston does not show an insulator positioned within a wall opening as the insulator is forced into a metal eyelet which is in turn soldered into a wall opening and, finally, that the references do not show a sealed lead-through combination where the conductor has an annular flange embedded in the insulator. The board considered and answered each of these contentions, respectively, saying:

"* * * Johnston clearly states and discloses that the tube 10 has an outside diameter larger than the diameter of the eyelet 12 and hence would be secured in place by forcing it through the eyelet 12. While it may be possible to assemble appellants' device and then insert it in the wall opening, there is no disclosure of this mode of assembly in the original specification. In line 19, page 2; line 5, page 3; line 23, page 4; line 14, page 6; and lines 10 and 22, page 7 it is clearly stated that the conductor rod is forced through the opening in the bushing after the bushing is inserted in the wall member.

* * * * * *

"* * * Johnston discloses the eyelet 12 soldered or welded in an opening in the housing 19 and when so secured is an opening in a wall member. In this connection the British patent discloses the insertion of the insulator directly in the opening in the wall member 1 and it appears to be merely a matter of choice whether the eyelet 12 is secured in an opening in the well member or whether the opening of the wall member is directly used as disclosed in the British patent.

* * * * * *

"* * * The use of an annular flange to aid in the securing of an insulating tube around a cylindrical member is clearly shown to be exhausted in Wilkoff and can obviously be used for that purpose wherever desired * * *. * * * As drawn, they [the claims] merely include an annular flange located somewhere on the conductor pin, which flange is embedded within the plastic insulator. As noted above, we do not consider that it would require invention, especially in view of Wilkoff, to broadly use an annular flange on the conductor 16 of Johnston so that it would be embedded within the plastic insulator."

Appellants' contentions here are essentially those considered and answered by the board. The claims are drawn to a combination which is clearly shown by either Johnston or the British patent with the sole exception of the annular flange, which, in keeping with the claims, merely aids in retaining or securing the conductor within the insulating bushing. This expedient we deem to be obvious, especially in view of Wilkoff.

In regard to Johnston's metal eyelet which appellants contend is not a wall opening, notwithstanding that it is later secured in the housing wall, we note that appellants' specification says:

"The bushing, * * * is placed in an opening in the housing, which may be a chamfered opening, or is a separately applied header or plate which is fitted to the housing in sealed relation."

This is clearly the equivalent of Johnston's structure.

We find no errors in the board's decision which is therefore affirmed.

Affirmed.